Good morning, counsel. May it please the court. My name is Elsa Greger-Lunas. I represent the City of Chicago in this case. The primary issue in this case is that of accident. The under the Workers' Compensation Act, a repetitive trauma under the Workers' Compensation Act, or an exposure or disablement under the Occupational Diseases Act? And also, who has the power to decide which remedy under which the petitioner can recover? I will show that the Commissioner's decision as relates to accident is an error as a matter of law, because it fails to delineate what type of accident occurred and under what act the petitioner should recover. The basis for my argument lies in statutory construction and is an issue which should be reviewed de novo. As a threshold issue, can the Commission consider a new theory of recovery if they precluded from doing it? I'm sorry, can you repeat? Is the Commission precluded from deciding a theory of recovery that was not argued in the briefs? I believe that the Commission can argue a theory of recovery that isn't included in the briefs. However, the statute is very specific in that the petitioner is able to choose their own remedy. The statute does not afford any power to the Commission to choose under which act specifically the petitioner can recover under. Certainly, the Commission does have the power to determine under the Workers' Compensation Act alone whether the petitioner can sustain a single incident of trauma or repetitive trauma. However, there has never been any cases indicated that the Commission can decide whether the petitioner can recover under the Workers' Compensation Act or the Occupational Diseases Act. Where did the Commission decide that it was, that she would recover under the Workers' Compensation Act? Well, I was going to Just because they said that it was the date of the accident, they suppose the date of exposure, that your whole case rests on that? Essentially, I'm actually not quite sure which act the Commission found under. We know what she filed under. She filed under the Occupational Diseases Act. Correct, Your Honor. And the counsel for the petitioner made it very clear and very specific at the start of trial that this was an exposure type of case and not only on that particular date where she succumbed to an injury on September 12, 1991. The arbitrator's decision of accident to the sentence, the one sentence, is extraordinarily confusing. And I'd like to read it for you at this time. As a result of petitioner's exposure to a variety of toxic fumes, especially to MIBK, over a period of years while working in the labs of respondent, she suffered a compensable accident which manifested itself on 9-12-92 when she was exposed to an excessive amount of toxic fumes. I see three different... I've got smells of the Occupational Diseases Act. I believe that part of it does sound like the Occupational Diseases Act, of course. The arbitrator indicates that she had exposure to toxic fumes over a variety of years. However, the arbitrator also indicates that it might have been a specific incident of trauma or repetitive trauma under the Workers' Compensation Act. They indicate that she... Why did she say that, that it's a repetitive trauma under the Workers' Compensation Act? I've got the decision right here. Sure. What page? It doesn't specifically say that, Your Honor. You're correct. Did she ever mention the words Workers' Compensation Act anywhere in this decision? No. However... Did the Commission ever mention the words Workers' Compensation Act anywhere in this decision? No, Your Honor. Then the fact that it was decided under the Workers' Compensation Act is nothing more than your spin on the decision. I don't agree with you, Your Honor, in that the definitions and wording used in the decision sound like words used in the Workers' Compensation Act. The Occupational Diseases Act requires that a date of disablement be found. Those words are not found in the Commission's decision whatsoever. And the Occupational Diseases Act must also find the last date of the exposure to the hazards of the disease. I find nowhere in the Commission's decision anywhere indicating what the last date of the exposure to the disease is, or what her date of disablement was according to the Occupational Diseases Act, Section 1E. In fact, the sentence-finding accident, I believe, does lean more heavily towards the Workers' Compensation Act. The arbitrator indicates she suffered a compensable accident which manifested itself. Manifested itself to me rings of a repetitive trauma type of injury manifesting on a particular date. Something that had occurred over a period of time, and on September 12, 1991, it manifested itself. If a person inhales toxic fumes and damages their lungs and brains on a specific date, but continues to work in the job for days thereafter, is it your contention that what happened on the specific date is not in itself compensable under the Occupational Diseases Act? If that date is shown to be the date of disablement and the last date of the exposure to the disease, then yes. Why does it have to be the last date of exposure? The last date of exposure generally just identifies which employer is going to get stuck paying for it. But in this particular case, it was the same employer all the way down the line. So that doesn't make any difference. This arbitrator found, in accordance with the application for adjustment claim, that on a specific date, I think it's in the first paragraph of her decision, she alleges that on September 12, 1991, she suffered injuries to her lungs, respiratory system, head, brain, and other internal organs as a result of inhaling toxic vapors and chemicals in the hematology lab of the city of Chicago located in the Daly Center. Then goes on and talks about what her degrees are and what the evidence is, and makes a finding that this is what happened. So why is it not compensable? I would argue, Your Honor, that the petitioner did choose the remedy to be under the Occupational Diseases Act, and they found either a specific incident of trauma or repetitive trauma under the Workers' Compensation Act. The wording of the decision clearly indicates that they found an accident that manifested itself on 9-12-92, which to me sounds like a repetitive trauma type of a theory. It's extremely important in this case, too, because the date of exposure, or not the last date of exposure, the date of disablement is actually not until February of 1995. So she did continue to work for the labs of the city of Chicago. However, she switched labs following this incident. There's no evidence in the record to show that those chemicals that she was exposed to on that day, she was ever exposed to again. In fact, the record shows that the hematology lab had a significantly increased number of samples on that day, and that's possibly what caused the incident on September 12, 1991. There's no evidence in the record that she was ever exposed to that kind of a situation again. Well, what about the testimony of Dr. Vest? He opined, there's his deposition, he opined that the claimant was exposed to toxins on a semi-chronic basis, and that in September of 1991 she suffered an index episode, which precipitated her current condition of ill-being. I would argue that that opinion is not grounded in any facts contained in the record. On that date, she did not have any complaints of neurological problems, memory problems, any kind of neurological problem associated with her. On September 12, 1991? Correct. She didn't go to the hospital? She went to the hospital and treated for a pulmonary condition. She was short of breath. She couldn't breathe. What she treated for for several years following that date was solely a pulmonary condition and not a neurological condition. And this does go to the manifest way of the evidence of this decision. However, I would argue that the threshold issue of this matter as far as accident goes, is whether or not the arbitrator correctly found a date of disablement under the Occupational Diseases Act. There's no dispute in this case that the date of disablement would be February 9, 1995. Why isn't that date anywhere in the arbitrator's decision? That would be the date of disablement in this cause. And why do you arrive at that conclusion? Because it is the last day that the petitioner was able to earn wages under Section 1E of the Occupational Diseases Act. You can't be disabled and continue to work if you're injured under the Occupational Diseases Act? I don't understand this. Yes, you can be disabled. Is there a case that supports this proposition of yours? Why is the last day she worked her date of disablement? That is the definition according to the plain language of the statute under Section 1E of the Occupational Diseases Act. And what does it say? It indicates that, here I can pull it up for you. The event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer for whom she claims compensation or equal wages and other suitable employment.  I'll be in a different lab following that date. And therefore, she was still working for the respondent. And her last date that she was able to earn wages and when she was taken completely off of work by her psychiatrist was February 9th of 1995. Yes, 1995. Excuse me. Any other questions? Thank you. Thank you. Counsel, please. Good morning. May it please the Justice of the Honorable Court. I'm Robert Wilson. On behalf of Petitioner at the Commission, Defendant Applee, Anita Bowden. It's our position that this matter has been fully litigated and determined by the Commission, by the Circuit Court, and that manifest weight and waiver suggests that the decision be affirmed. The disablement accident, this was fully litigated. The idea that Petitioner was disabled or seeming to accept that is only a recent adopted position by the respondent Do they argue that before the Commission? No. Before the Commission, the defense was accident. The defense was causal connection. When the stipulation sheet was requested for hearing, it was presented to the arbitrator. The issues in dispute as designated by counsel or respondent, no thought or idea of disablement or time or issue of statute of limitations for disablement was raised. This was not raised at the Commission level when a review was filed by respondents. Many and several theories used from the Benedetti case, from pronouncing it correctly, I don't know, but the idea that there was not even an injury here was the idea of respondent and the employer. This has just been a case that they have not accepted whatsoever for many, many years and was litigated through witnesses and depositions to the degree. And they had every opportunity to interpose the defense that they're raising now at every turn of the litigation. Let's assume for a minute that we don't hold it forfeited, and you're right, they didn't raise it before the Commission. Section 1E is in the disjunctive. It talks about two things. It talks about a temporary or permanent functional impairment or the event of becoming disabled. So they want to talk only about the February date, but what about the date of the functional impairment? Well, I'm not absolutely certain of the legal significance of these conclusions. We just know that following the occurrence of September 12, 1991, her condition continued to deteriorate. Well, that's the functional impairment. That's what I'm asking you. Can she recover based only on that functional impairment, or does she have to become fully disabled and unable to earn full wages? I mean, 1E is in the disjunctive. It says an impairment or partial impairment, temporary or permanent, in the function of the body or any of the members of the body or the event of becoming disabled from earning full earnings at work. It's set forth in the disjunctive. It occurs to me that your case rests on the former rather than being disabled from full earnings. Certainly, you know, that's an interpretation that, you know, we wouldn't object to. We do feel that the lower courts were correct in their determinations. However, we defer to the analysis that this court would make. She was at work. You know, there would be a question as to, based upon the memos, the calling in on the carpets, as to whether she was actually performing her work during the period after 1991. Dr. Auerbach thought she was nuts. There was a memorandum of disruptive behavior attributed to her. No one attached the toxic exposure as to the basis for this. She was asked to be seen by a psychiatrist. All of these events, we think, suggest that she was disabled at work. Ongoing, as Judge White pointed out in his opinion, that the doctor's visits became much more frequent after September 1991. The facts that the doctors did not hit the head of the hammer, hit the nail on the head, they did not diagnose it until sometime in 1994. But that doesn't mean that she didn't suffer from the condition. And these were things, whatever the position of the employer is now, it's our position that they could have presented it through their statement of exceptions before the commission. They could have presented it through their supplemental addendum brief. before the commission. They could have submitted it before Judge White. But here they're making this contention now. Can I ask a question? There's something here I just don't understand. This event that the doctors say precipitated this occurred in September of 1991. The arbitrator's decision wasn't even written until 2004. How could it take 13 years to get this case tried? How's that possible? How can the commission permit this? Well, Your Honor, there are certain things that aren't necessarily in the record. I recall such things as getting the evidence deposition of Dr. Warbach, which we took at his home. That was a process of motion practice in the sense that motions may not appear in the record since they weren't file stamped at the commission. But that took several months to obtain. There were IMEs that apparently were not put in evidence of where petitions sent to be evaluated by psychiatrists. There were things occurring in the case. Respondents, since work contract is not the discovery, the request to produce, they wanted all of her income tax returns for many, many years. We gave them all to them. They investigated, scrutinized this case from top to bottom. And eventually the petitioner was able to sustain a hearing and a reward in the case. Okay. Thank you. Counsel Revettal, please. You want to tell me why you don't talk about the disjunctive in warning? I'm glad that you did bring that up, and I apologize for not bringing up that first portion. How about putting it in your brief? I was relying on case law that solely cited that portion of the act. However, I would like to speak to that first portion of Section 1E. Let's speak to the portion that you never argued it in front of the commission. Let's talk about that. Okay. Basically, we have appealed accident as well as checked off the boxes for Occupational Diseases Act from day one, from our appeal at the Illinois Workers' Compensation Commission. I know no case law indicating that we have to make the exact same arguments and use the exact same theories through every single level of appeal. Well, the issue not raised before the commission is weighed before us. The cases say so. If you didn't raise that issue vis-à-vis improper date of occurrence before the commission, it would occur that you forfeited it in front of us. I would suggest, however, that we did bring that issue before the commission due to the fact that we did appeal the issue of accident as well as occupational disease and date of disablement. It was on our petition for review, those boxes were checked off and we have preserved our appeal throughout each level of appeal in this case. And again, while there is issue preclusion, there is not that I know of argument or theory preclusion before this court. Further, regarding the temporary or permanent functional impairment that you spoke to, the first part of Section 1E of the Occupational Diseases Act, I would indicate that even if that portion was relied upon in finding a date of disablement or date of disablement according to the Occupational Diseases Act, that it would have far preceded September 12, 1991. There is medical evidence in the record indicating that the petitioner was treating with Dr. Stevenson for various pulmonary and cardiac conditions since 1985. Dr. Stevenson's handwritten notes on October 2, 1991 indicates she has a history of being sick from chemicals after 13 to 14 years. This significantly predates September 12, 1991, so I would argue that the temporary or permanent functional impairment to the petitioner would have begun in approximately 1985. Thank you. Thank you, counsel. The court will take the matter under driver's disposition and stand at recess until about 1.30.